JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
KEMP & KEMP
7435 W. Azure Drive, Suite 110
Las Vegas, NV 89130
702-258-1183 ph /702-258-6983 fax
jp@kemp-attorneys.com

Attorney for Plaintiff
*Barry Brymer*

**KEMP & KEMP**
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BARRY BRYMER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TESLA, INC., a foreign corporation<br><br>Defendants. | Case No.: 3:26-cv-784<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Barry Brymer ("Brymer"), by and through his counsel, Kemp & Kemp, complains against Defendant Tesla, Inc. ("Tesla") and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for disability discrimination, failure to provide reasonable accommodation, failure to engage in a good-faith interactive process, and unlawful use of protected medical leave against an employee, arising under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq.; Nevada Revised Statutes Chapter 613; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. Plaintiff seeks all remedies available under both state and federal law including a just allocation of the remedies and damages between the two statutory schemes as the court may deem appropriate

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

and consistent with the law. This shall include and embrace, but not be limited to, any necessary or desirable declaratory relief, preliminary or permanent injunctions, equitable orders of reinstatement and to ensure future compliance with the law, money damages, back pay, front pay, liquidated damages, interest, costs, attorney fees and every other conceivable remedy available under the laws supporting an award of remedies in this civil action.

2. Brymer worked successfully for Tesla for more than eight years. He was the first Engineering Technician hired into the GigaLab at Tesla's Gigafactory Nevada, trained numerous technicians and other personnel, and had no history of discipline or poor performance before the events at issue.

3. Brymer has a physical impairment involving his lower back that substantially limits major life activities including prolonged walking, lifting, bending, and twisting. For years, however, he performed his laboratory job successfully. On the relatively few tasks that were especially difficult during a flare-up, the laboratory's ordinary team-based practice allowed technicians to assist one another or trade tasks.

4. After new supervision arrived, Tesla began treating Brymer's disability and medically necessary absences as impediments to his continued employment. Tesla pressured him into a formal reasonable-accommodation process that he had not believed was necessary, relied on restrictions framed around his worst days and on purported job duties that did not accurately describe his actual GigaLab position, removed him from the position, placed him on involuntary unpaid leave, and then subjected him to an alternative-job process that did not return him to productive employment.

5. Tesla's actions ultimately deprived Brymer of his position, wages, bonus and raise opportunities, stock and other benefits, and forced him to obtain other employment after

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

Tesla provided no meaningful path back to his long-held position or to a suitable reassignment.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Brymer's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the ADA and FMLA.

7. This Court has supplemental jurisdiction over Brymer's Nevada-law claim pursuant to 28 U.S.C. § 1367 because that claim forms part of the same case or controversy as his federal claims.

8. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred at Tesla's Gigafactory Nevada in Storey County, Nevada, within the geographic area served by the Court's Reno courthouse, and Brymer resides in Northern Nevada.

9. Tesla does business in Nevada and employed Brymer at its Gigafactory Nevada facility. Tesla is subject to personal jurisdiction in Nevada.

## PARTIES

10. Plaintiff Barry Brymer is an individual and resident of Nevada. At all relevant times, he was an employee within the meaning of the ADA, FMLA, and Nevada law.

11. Defendant Tesla, Inc. is a corporation doing business in Nevada, including at Gigafactory Nevada, 1 Electric Avenue, Sparks, Nevada. Tesla employed far more than the minimum number of employees required for coverage under the ADA, FMLA, and NRS Chapter 613.

12. Plaintiff reserves the right to amend this Complaint to raise claims over any other appropriate party or parties, and/or to file independent actions against such other responsible parties as the facts are developed through discovery in this case.

## ADMINISTRATIVE EXHAUSTION

13. On or about September 4, 2025, Brymer timely filed Charge of Discrimination No. 550-2025-02909 with the Equal Employment Opportunity Commission ("EEOC"), identifying Tesla as the respondent and alleging disability discrimination, denial of reasonable accommodation, being regarded as more disabled than he actually was, involuntary unpaid leave, and the use of disability-related and FMLA-protected absences against him.
14. Brymer requested that the Charge be dual-filed with the Nevada Equal Rights Commission pursuant to the agencies' worksharing arrangement.
15. The EEOC completed its investigation and advised Brymer on July 9, 2026 that it would close its investigation and issue a Determination and Notice of Right to Sue. Brymer thereafter received the EEOC's Notice of Right to Sue instructing him to file this action if he desired to pursue his claims. This action is filed within the applicable limitations period.
16. Brymer has satisfied all conditions precedent to suit that are required for the claims asserted in this Complaint. The FMLA claims do not require administrative exhaustion.

## GENERAL ALLEGATIONS

### A. Brymer's Successful Career at Tesla

17. Tesla hired Brymer on or about March 6, 2017. He ultimately worked as a Quality Engineering Technician 3 in the GigaLab at Gigafactory Nevada.
18. Brymer was the first Engineering Technician hired into the GigaLab. Over the ensuing years, he became an experienced and trusted laboratory employee. He trained technicians, engineers, and cross-functional personnel and became a resource for technical work, safety, preventative maintenance, machine-shop work, Spark OES support, milling for shears, and cross-section work.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

19. Before the final review cycle at issue here, Brymer had never received a bad performance review or formal write-up. He consistently received satisfactory or better reviews and earned raises and bonuses when available.

20. Brymer was qualified for his position and, with reasonable accommodation when needed, could perform its essential functions.

**B. Brymer's Disability and Longstanding Work Practices**

21. Brymer has a lower-back condition that affects his musculoskeletal functioning and limits, among other things, prolonged walking, lifting, bending, and twisting.

22. Brymer nevertheless performed his job successfully for years with this condition. His disability did not prevent him from performing the actual essential functions of his GigaLab position.

23. Only a small portion of Brymer's laboratory work - approximately two tests among the many tests and tasks performed in the lab - was especially difficult during periods of increased back pain because of sample weight and repetitive bending or twisting.

24. The GigaLab operated as a team. Technicians routinely assisted one another and traded particular tests or tasks. For years, that ordinary team practice allowed Brymer to continue performing his job without difficulty and without a formal accommodation.

**C. Medical Leave and the First Poor Performance Review**

25. During the January through June 2025 review cycle, Brymer experienced serious episodes of back pain requiring medically necessary and approved absences, including emergency-room treatment and hospitalization. At least some of this leave was protected by the FMLA.

26. When Brymer was able to work, he continued contributing substantially. Among other things, he took responsibility for preventative maintenance in the lab and machine shop,

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

performed cleanup and routine maintenance work, trained other personnel, and completed more than 400 Jira tickets during the review cycle.

27. Despite the amount of medically approved time he had been away from work, Brymer ranked fourth in documented work across the GFNVLAB group during that review cycle.

28. Before this period, Brymer had not been told that his performance was deficient. His routine feedback had instead included praise and encouragement.

29. Nevertheless, Brymer received the first low performance review of his more than eight years at Tesla. The low review cost him eligibility for a raise and bonus.

30. Tesla cited purported low performance during the first part of the cycle and insufficient engineering interaction on non-routine testing. Brymer disputed both rationales. The period of purportedly low performance coincided with his medically necessary absences, and his work schedule - approximately noon to midnight during the latter half of the week - materially limited overlap with engineers who generally worked earlier in the day.

31. Brymer requested reconsideration of the review and asked Tesla to account fairly for the substantial medically approved time during which he was absent and therefore could not generate the same volume of work as an employee present for the entire review period.

32. During the review process, manager Stefanie Doerffler told Brymer, in substance, that Tesla could not adjust the review to account for his medical time away unless he had completed a Reasonable Accommodation request, and that future reviews would continue to be affected if he did not enter the formal accommodation process.

33. Tesla thereby used Brymer's disability-related and FMLA-protected absences as a negative factor in evaluating his performance and compensation opportunities.

**D. Tesla Pressures Brymer Into the Formal Accommodation Process**

34. In or around January 2025, after Lisa Kennedy became Brymer's supervisor, Kennedy repeatedly urged Brymer to enter Tesla's Reasonable Accommodation program.

35. Brymer repeatedly explained that he did not believe a formal accommodation was necessary because he had successfully performed the job for years using the lab's ordinary teamwork practices.

36. Kennedy characterized the process to Brymer as essentially a formality and indicated that formal documentation would prevent the existing assistance from appearing to be preferential treatment.

37. After continued pressure from Kennedy, and later after being told his medical absences would continue to affect his performance reviews absent a formal accommodation, Brymer proceeded with Tesla's accommodation process.

38. Tesla provided a physician questionnaire. Brymer's medical provider completed it on May 30, 2025. The provider identified physical limitations, including a maximum lifting/carrying restriction of ten pounds and limitations associated with bending, twisting, standing, sitting, walking, kneeling, and similar activities, and indicated that restrictions were permanent but would continue to be reevaluated.

39. Critically, on Tesla's own form, Brymer's provider checked the response stating that Brymer's impairment did not limit his ability to perform all essential functions of his position. The provider also checked that Brymer's continued assignment to his job did not pose a significant risk of substantial harm to Brymer or others.

40. The provider further indicated that Brymer would require two extra breaks during a twelve-hour shift. These restrictions and suggestions were intended to address Brymer's limitations,

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

particularly during flare-ups; they were not a medical declaration that Brymer was incapable of performing his longstanding GigaLab job.

41. After submitting the paperwork, Brymer again told Kennedy that he did not believe he needed the formal program. Kennedy nevertheless encouraged him to continue with the request.

**E. Tesla Uses the Accommodation Process to Remove Brymer From His Job**

42. On August 19, 2025, Tesla's ADA/HR personnel met with Brymer regarding the accommodation request.

43. During that meeting, Tesla treated restrictions framed around Brymer's most difficult days as if they described his functional ability at all times and concluded that he could not be accommodated in his existing role.

44. Brymer challenged the factual basis for that conclusion. Tesla relied on a description of purported essential functions that did not accurately reflect the specialized laboratory job Brymer had actually performed for years.

45. For example, Tesla relied on duties such as frequently lifting approximately 35 pounds, collecting samples line-side, pushing heavy equipment or battery modules, and working in kneeling, crawling, or other awkward positions. Brymer's actual GigaLab position did not routinely require those activities. Samples were brought to the laboratory, workstations had seating, and the unusually physical testing could be handled through the lab's established practice of trading tasks among team members.

46. The information used by the ADA personnel to characterize Brymer's position had been supplied or approved through Brymer's management chain, including Kennedy and

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

Doerffler - the same management personnel who had pushed Brymer toward the formal accommodation process.

47. Tesla did not conduct a meaningful individualized assessment of the actual duties Brymer had successfully performed for years, the frequency with which any disputed physical duty was actually performed, or whether the existing team practices and other reasonable modifications would permit him to remain in his position.

48. Tesla instead removed Brymer from his position and placed him on involuntary medical leave effective immediately.

49. Brymer attempted immediately to contact Kennedy and Doerffler because he believed Tesla's decision rested on a misunderstanding. They did not meaningfully engage with him; Kennedy ultimately directed him to communicate through the ADA process.

50. The forced leave was effectively unpaid. Brymer was ready and willing to work, but Tesla would not permit him to return to his job, while leave/benefit administrators required medical documentation inconsistent with the fact that Brymer was capable of working with accommodation.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

**F. Tesla's Alternative Job Search Did Not Provide an Effective Accommodation**

51. Tesla told Brymer that he could pursue an alternative-job process. Tesla did not identify and offer Brymer a specific equivalent vacant position for which he was qualified.

52. Instead, Tesla periodically provided large lists containing dozens of job postings and required Brymer to identify positions, apply, and compete through a process that frequently involved positions that had already been filled, closed, or otherwise were unavailable by the time he could pursue them.

53. Brymer applied for multiple positions but was not placed into a suitable vacancy. Positions identified through the process also threatened a substantial reduction in compensation because Brymer would lose his laboratory compensation and shift differential.

54. Tesla's alternative-job process did not restore Brymer to work and did not provide an effective reasonable accommodation. Brymer remained without his regular wages for approximately two months while the process continued.

**G. Constructive Discharge and Damages**

55. By October 2025, Tesla had left Brymer without his long-held job, without regular income, without meaningful support from his management, and without a viable path back to his position or to an equivalent suitable vacancy.

56. Brymer fell substantially behind on his financial obligations, including his mortgage, and lost more than $10,000 in Tesla stock that would otherwise have vested. He also lost compensation, benefits, raise and bonus opportunities, and other employment-related value.

57. Faced with continuing unpaid leave and no effective accommodation from Tesla, Brymer obtained employment with Redwood Materials beginning on or about October 20, 2025. Under the circumstances, Tesla's actions made continued employment on reasonable terms untenable and resulted in Brymer's constructive discharge.

58. Tesla's conduct caused Brymer substantial emotional distress, humiliation, anxiety, loss of dignity, and other non-economic harm, in addition to economic loss.

**FIRST CAUSE OF ACTION**

Disability Discrimination - Americans with Disabilities Act

(42 U.S.C. §§ 12101 et seq.)

59. Brymer realleges and incorporates the preceding paragraphs as though fully set forth herein.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

60. Brymer is an individual with a disability within the meaning of the ADA and, alternatively or additionally, Tesla regarded him as having an impairment that substantially restricted his ability to work in his established position.

61. Brymer was qualified for his Quality Engineering Technician 3 position and could perform its actual essential functions with or without reasonable accommodation.

62. Tesla knew of Brymer's disability and subjected him to adverse employment actions because of disability, including a low performance review and lost compensation opportunities tied to disability-related absences, removal from his position, involuntary unpaid leave, denial of continued work in his established position, and constructive discharge.

63. Tesla also treated Brymer as incapable of performing his position based on an inaccurate and overbroad assessment of his restrictions and of the position's actual essential functions, notwithstanding his years of successful performance and his provider's statement that his impairment did not prevent performance of all essential functions.

64. Tesla's stated reasons for its actions were pretextual, exaggerated, incomplete, and/or based on a description of the job that did not reflect the work Brymer actually performed. Tesla acted in bad faith and employed means of deception, misrepresentation, and artifice with the intent to deprive Brymer of his rights and protections under the law.

65. As a direct and proximate result, Brymer suffered economic and non-economic damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

Failure to Accommodate and Failure to Engage in the Interactive Process - ADA

(42 U.S.C. §§ 12101 et seq.)

66. Brymer realleges and incorporates all other pertinent paragraphs and allegations set forth herein as though fully set forth herein.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

67. Tesla knew of Brymer's disability and limitations and was obligated to engage in a timely, good-faith interactive process to identify an effective reasonable accommodation.

68. Reasonable accommodations were available that would have allowed Brymer to continue performing the actual essential functions of his existing position, including continuation or formalization of the longstanding team-based assistance for the small number of unusually physical tasks, additional breaks when needed, and other job modifications that did not eliminate an actual essential function.

69. Tesla failed to conduct an individualized assessment of Brymer's actual job and instead relied on a generic or inaccurate description of duties, treated worst-day limitations as constant limitations, and removed Brymer from work rather than meaningfully exploring accommodations that would keep him working.

70. Alternatively, if Brymer could not be accommodated in his existing position, Tesla failed to provide an effective reassignment accommodation. Tesla did not identify and place him into a suitable vacant position for which he was qualified, but instead required him to search and compete through large lists of postings while he remained on unpaid leave.

71. Tesla's failures in the interactive process prevented identification and implementation of an effective reasonable accommodation and caused Brymer to lose his position and employment.

72. As a direct and proximate result, Brymer suffered economic and non-economic damages in an amount to be proven at trial.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

**THIRD CAUSE OF ACTION**
Disability Discrimination - Nevada Law
(NRS 613.310 et seq., including NRS 613.330)

73. Brymer realleges and incorporates all other pertinent paragraphs and allegations set forth herein as though fully set forth herein.

74. Brymer had a disability as defined by NRS 613.310 and was qualified to perform his job with or without reasonable accommodation.

75. Tesla discriminated against Brymer with respect to compensation, terms, conditions, privileges, and continuation of employment because of disability and/or because Tesla regarded him as disabled, including by the acts alleged above.

76. Tesla's conduct violated NRS 613.330 and related provisions of Nevada law.

77. As a direct and proximate result, Brymer suffered economic and non-economic damages and is entitled to the relief authorized by Nevada law, including NRS 613.420 and 613.432, to the extent applicable.

**FOURTH CAUSE OF ACTION**
FMLA Interference
(29 U.S.C. §§ 2601 et seq.)

78. Brymer realleges and incorporates all other pertinent paragraphs and allegations set forth herein as though fully set forth herein.

79. At all relevant times, Tesla was an employer covered by the FMLA, Brymer was an eligible employee, and Brymer suffered from a serious health condition for which he took qualifying, medically supported leave.

80. Tesla was aware of Brymer's medically necessary leave and approved his absences.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

81. Tesla nevertheless used Brymer's protected leave and the resulting reduction in time physically present at work as a negative factor in his performance review and resulting compensation opportunities.

82. Tesla further informed Brymer, in substance, that his medically related absences would continue to affect future reviews unless he entered a separate formal accommodation process.

83. By considering FMLA-protected leave negatively in evaluating Brymer's performance and employment benefits, Tesla interfered with, restrained, and/or denied Brymer's exercise of FMLA rights.

84. Tesla's violations caused Brymer lost compensation and benefits and other damages recoverable under 29 U.S.C. § 2617, including interest and liquidated damages as allowed by law.

**FIFTH CAUSE OF ACTION**
FMLA Retaliation / Discrimination
(29 U.S.C. §§ 2601 et seq.)

85. Brymer realleges and incorporates all other pertinent paragraphs and allegations set forth herein as though fully set forth herein.

86. Brymer exercised rights protected by the FMLA by taking medically necessary leave for his serious health condition and by seeking to have that protected leave properly recognized rather than used against him.

87. Tesla thereafter subjected Brymer to adverse employment actions, including refusing to correct the performance consequences associated with his protected absences, pressuring him into a separate accommodation process as the condition for avoiding similar treatment in

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

future reviews, removing him from his position, placing him on involuntary unpaid leave, and ultimately causing the end of his employment.

88. Brymer's exercise of FMLA rights was a negative factor in Tesla's treatment of him and in the adverse employment actions alleged herein.

89. Tesla's conduct was willful and/or undertaken with reckless disregard for Brymer's FMLA rights.

90. As a direct and proximate result, Brymer suffered damages recoverable under 29 U.S.C. § 2617, including lost wages, benefits, interest, equitable relief, and liquidated damages as allowed by law.

91. Brymer has been forced to hire an attorney and incur substantial attorney fees and costs to protect his rights through pursuit of this action. Brymer is entitled to an award of costs and reasonable attorney fees as available under all of the statutory schemes on which his claims are premised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Barry Brymer respectfully requests judgment against Defendants as follows:

A. For all past and future lost wages, salary, bonuses, stock, benefits, and other compensation according to proof;

B. For compensatory damages for emotional distress and other non-economic injury in an amount to be determined by the jury;

C. For nominal damages if that be all that is allowed;

D. For punitive damages under the ADA to the extent permitted by law;

E. For liquidated damages, interest, and other statutory relief available under the FMLA;

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

F. For appropriate equitable relief, including an order of reinstatement that comports with the law, or in the alternative front pay and/or other make-whole relief as the Court deems just;

G. For an amount of money sufficient to "gross up" or compensate Plaintiff and ameliorate any adverse tax consequences he may suffer as a result of any recovery in this case that he would not have incurred had Defendant not violated the law making recovery through litigation necessary;

H. For reasonable attorneys' fees and costs pursuant to applicable federal and Nevada law;

I. For pre-judgment and post-judgment interest as allowed by law; and

J. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated this 6th day of October 2026.

/s/ James P. Kemp

JAMES P. KEMP, ESQ.
Nevada Bar No. 6375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
Las Vegas, NV 89130
702-258-1183/702-258-6983 fax
jp@kemp-attorneys.com
Attorneys for Plaintiff Barry Brymer